```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                                   :

HARDMAN'S HOTEL OF SMITHFIELD, INC.:    BK No. 05-15700
         Debtor in Possession            Chapter 11

- - - - - - - - - - - - - - - - - -x
```

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO ALTER OR AMEND JUDGMENT</u>**

APPEARANCES:

    Andrew Richardson, Esq.
    Attorney for Debtor in Possession
    BOYAJIAN HARRINGTON & RICHARDSON
    182 Waterman Street
    Providence, Rhode Island 02906

    John P. McCoy, Esq.
    Attorney for Creditors, Herbert and Cheryl Hardman
    CARROLL KELLY & MURPHY
    One Turks Head Plaza, Suite 400
    Providence, Rhode Island 02903

    Leonard DePasquale, Esq.
    Assistant United States Trustee
    Office of the United States Trustee
    10 Dorrance Street, Room 910
    Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 05-15700

Heard on the motion of Boyajian, Harrington & Richardson ("BH&R"), counsel for the Debtor in Possession ("DIP"), to Alter or Amend our March 9, 2007, Order denying its motion to return a $25,000 retainer to Cheryl and Herbert Hardman, principals of the Debtor.  As grounds for the Motion, DIP counsel states that: (1) the Debtor's Chapter 11 plan as confirmed provided for the return of the retainer; (2) DIP counsel owes no fiduciary duty to the bankruptcy estate; and (3) the Order contains errors of fact.

For the reasons discussed below, and because DIP counsel has failed to show that the March 9, 2007 Order was based on errors of law, or that it should be altered on account of newly discovered evidence, the Motion to return the retainer to the principals is DENIED.  However, because DIP counsel does point out several inaccurate, although non-material factual statements in our Order,[1] I will amend the Order, where appropriate.

## DISCUSSION

A motion to alter or amend judgment is governed by Fed. R. Civ. P. 59(e), applicable in bankruptcy under Fed. R. Bankr. P.

---

[1] *See In re Bank of New England* Corp., 142 B.R. 584, 588, n.5 (Bankr. D. Mass. 1992) (bankruptcy court did not commit a manifest error of fact sufficient to alter judgment when it confused the date of one of nine inconsistences mentioned in its opinion); *see also Black's Law Dictionary (8th ed. 2004)* (manifest error is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.")

1

BK No. 05-15700

9023.[2]  To succeed on such a motion, the movant must establish either:  (1) that the judgment was based on an error of fact or law; or (2) the existence of newly discovered material evidence. *Rowbotham v. Rowbotham (In re Rowbotham),* 359 B.R. 356, 2007 WL 878499, *4 (1st Cir. B.A.P. 2007); *In re Almacs, Inc.*, 181 B.R. 143, 144 (Bankr. D.R.I. 1995); *Int'l Strategies Group, LTD. v. Greenberg Traurig, LLP, et al.,* 482 F.3d 1 (1st Cir. 2007); *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006); *In re Wedgestone Financial*, 142 B.R. 7, 8 (Bankr. D. Mass. 1992).

The movant may not raise arguments that could or should have been made at trial, or to argue a new legal theory, *see In re Almacs, Inc.*, 181 B.R. at 144; *Aybar, et al. v. Crispin-Reyes,* 118 F.3d 10, 16 (1st Cir. 1997) (citations omitted); or to repeat arguments that were previously considered and rejected.  *Nat'l Finish Co. v. BarclaysAmerican/Commercial, Inc.,* 899 F2d. 119, 124, (1st Cir. 1990).

---

[2] Fed. R. Bankr. P. 9023(e) states: "Motion to Alter or Amend Judgment.  Any motion to alter or amend a judgment must be filed no later than 10 days after entry of the judgment."
  Also, while reconsideration is not a term appearing in the Federal Rules of Civil Procedure, it is generally accepted that courts treat such pleadings as motions under Rule 59(e), because reconsideration draws attention to the correctness of a court's decision. *See Aguiar v. Interbay Funding, LLC, (In re Aguiar)*, 311 B.R. 129, 134, 135 (B.A.P. 1st Cir. 2004); *Vargas v. Gonzalez,* 975 F.2d 916, 917 (1st Cir. 1992).

BK No. 05-15700

Here, Movant does not present newly discovered evidence. Instead, it identifies several factual errors in our March 9 opinion, and advances for the first time a legal argument that was not presented at the hearing on the issue under consideration.

BHR points out certain factual errors, which are acknowledged as follows:

(1) On page 1 of the opinion, I stated that the request to return the retainer to the Hardmans is found in BH&R's fee application. Upon review, I stand corrected and acknowledge that said request was not contained in the fee application. Instead, the request appears on page 9 of the Plan. *See* Doc. No. 185;

(2) In footnote 2 of the opinion, I calculated that if $25,000 were distributed to general creditors, that would increase the dividend by 55%, giving them approximately 35 cents on the dollar. Movant correctly points out that I failed to consider the Debtor's consent order with LaSalle Bank, wherein the parties agreed that any distribution to unsecured creditors would be divided: 55% to LaSalle and 45% to creditors. *See* Doc. No. 105. The Movant is correct to say that the increase in distribution to unsecured creditors would be 28%, not 55%;

3

BK No. 05-15700

(3) In the decision, I suggested that the Hardmans were personally liable on a loan to LaSalle Bank. In fact, the note was a non-recourse transaction which was not guaranteed by the Hardmans; and

(4) On page 9, I state that the filing of the Chapter 11 case was beneficial for the principals because it allowed them to sell their business for a higher price. I now know that there was no quantifiable benefit to the principals, *vis-a-vis the LaSalle Bank loan*, because they had no liability under that obligation. There was, however, a tangible benefit at least with regard to one creditor for whose debt they were personally liable – Direct Capital Corporation, in an unknown amount. *See* Schedule F & H, Doc. No. 56.

As to BH&R's contention that there is no fiduciary duty to creditors, the argument is that DIP counsel has no fiduciary duty to the bankruptcy estate because he cannot simultaneously represent both the interests of the DIP and the estate, relying on *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434 (D. Utah 1998).[3]

---

[3] Movant also cites *In re Water's Edge L.P.*, 251 B.R. 1 (Bankr. D. Mass. 2000), for the proposition that a DIP should be allowed to place its own interests above creditors when negotiating a plan of reorganization, especially given its ability to cram down certain creditors under the Code. What happened in the instant case is far different from what Judge Queenan was addressing in *Water's Edge*. In the instant case, DIP counsel would put the

4

BK No. 05-15700

*The Hansen* case:

In *Hansen* the court held that DIP counsel owes no duty to the bankruptcy estate or its beneficiaries because safeguards already exist to protect the estate under §§ 327, 329, and Bankruptcy Rules 2014 and 2016, which require certain disclosures, and that counsel be disinterested.  220 B.R. 434, 455-56 (D. Utah 1998).  The *Hansen* court also held that because counsel can only owe a duty to his or her client, beneficiaries of the estate are not clients of DIP counsel, and therefore, no duty can arise.  *Id*. at 457.  The court held that an inherent conflict of interest exists when DIP counsel performs dual roles, explaining:

> The rights and obligations exercised by management under the Bankruptcy Code can be classified into three categories: (1) administrative functions, including hiring professionals and filing the reports and accountings generally associated with running the business while in Chapter 11; (2) operating functions, which include discretionary business decisions whether to use, sell or lease property of the estate, obtain financing and continue operation; and (3) loss allocation functions, which include rejecting or assuming executory contracts, objecting to claims, avoiding transfers and obligations, and filing a reorganization plan. ... The nature of management's operating and loss allocation functions is such that management is required to differentiate among classes of beneficiaries, and thus make decisions which benefit some claimants over others.  Thus, because its fiduciary duty runs to all classes of claimants, management for the debtor-in-possession is placed in a conflict-ridden position.
> ...

---

rights of *principals* ahead of unsecured creditors.  *In re Water's Edge* has no application here.

5

BK No. 05-15700

> Imposing upon counsel for debtor-in-possession the client's fiduciary duty to the estate beneficiaries in effect transforms these nonclients into clients. An attorney may represent multiple beneficiaries only if their interests are not adverse. ... The interests of estate beneficiaries are inherently adverse. Nor can the attorney act as an intermediary for these interests under Model Rule 2.2. The role of intermediary requires that common representation advance the "mutual interest" of the beneficiaries; the various creditor and shareholder groups do not share a "mutual interest." Needless to say, the attorney cannot fulfill his/her duties of loyalty to and zealous representation of these conflicting interests.

*Hansen,* 220 B.R. at 459-61.

While the reasoning in *Hansen* is certainly one way of looking at the issue, most courts addressing this question have held to the contrary, obeying the plain language of Section 1107(a) of the Code, i.e., that the attorney for a debtor in possession is indeed a fiduciary of the bankruptcy estate. See *In re Count Liberty, LLC,*_ B.R. _, 2007 WL 1705627 (Bankr. N.D. Cal. May 4, 2007); In *re Taxman Clothing Co.,* 49 F.3d 310, 314 (7th Cir. 1995) ("A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate."); *Continental Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.),* 890 F.2d 1312, 1323 (5th Cir. 1989) ("trustees and attorneys for trustees are held to high fiduciary standards of conduct"); *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.),* 785 F.2d 1249, 1256 n. 7

6

BK No. 05-15700

(5th Cir. 1986) ("court-appointed attorneys are officers of the court and fiduciaries"); *In re Delta Petroleum (P.R.), Ltd.*, 193 B.R. 99, 111 (D. Puerto Rico 1996) ("a trustee's counsel owes a higher fiduciary duty to the estate than to the trustee"); *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 B.R. 19, 25 (2d Cir. B.A.P. 1997) ("[b]oth management and its counsel have fiduciary duties to an estate in bankruptcy"); *In re Sky Valley, Inc.*, 135 B.R. 925, 939 (Bankr. N.D. Ga. 1992) ("[counsel for] the debtor in possession is also a fiduciary to the estate"); *In re Doors and More, Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991) ("attorney for the trustee or debtor in possession is also a fiduciary of the estate"); *In re Consupak, Inc.*, 87 B.R. 529, 548 (Bankr. N.D. Ill. 1988) ("the fiduciary duties of counsel for a bankruptcy trustee have been held to be 'equivalent' to those of the trustee"), *accord In re Rancourt, 207 B.R. 338, 358* (Bankr. D.N.H. 1997) (although attorney representing DIP faces prospect of some conflict of interest between debtor and bankruptcy estate, not all divergence of interests means that attorney cannot serve as fiduciary for both). Given the plain language of 11 U.S.C. § 1107(a) I will follow the clear weight of authority on this issue, and respectfully disagree with the reasons and the holding in *Hansen*.

BK No. 05-15700

BH&R also argues that the provision in the proposed plan passes muster because it states:

> The firm Boyajian, Harrington & Richardson received a $25,000.00 retainer from the debtor's principals prior to the filing of the Ch. 11 petition. However, BHR has not sought to apply any portion of the retainer to its fees. BHR is seeking court approval to pay its entire fee from the debtor's estate which would, in turn, allow BHR to return the retainer to the Hardmans. It is anticipated that BHR's fees will be approximately $85,000.00

Doc. 185, Combined Plan Of Reorganization And Disclosure Statement, p. 9.

If given binding effect, this provision would render the creditor vote meaningless, i.e., BH&R must still seek Court approval for both its compensation and the removal of the $25,000 retainer from the bankruptcy estate. *See* 11 U.S.C. § 330(a) & R.I. LBR 2016-1 (g). The proper method of dealing with the Hardman retainer lies with BH&R in light of this Court's continuing belief that as counsel for DIP, BH&R's actions must be consistent with the fiduciary duty it owes to the bankruptcy estate. *See* 11 U.S.C. § 1107(a).[4]

---

[4] On this point, personal counsel for Cheryl and Herbert Hardman has recently filed an application for reimbursement of administrative expenses, detailing many beneficial services allegedly provided by the principals to the DIP, and requesting that the Hardmans be compensated on an administrative expense basis for the services. Had this newly provided information been provided much earlier in the process, a great deal of professional and Court time would have been avoided. The application for administrative expenses is set for hearing on August 9, 2007, at

BK No. 05-15700

Notwithstanding the non-dispositive factual corrections discussed above, for the reasons given and based on the authorities cited, the ruling on the merits of our March 9, 2007, Order remains unchanged. Accordingly, BH&R's Motion to Amend factual errors is GRANTED, in part, but the request to Alter Judgment on the fiduciary duty issue is DENIED.

Enter judgment consistent with this opinion.

Dated at Providence, Rhode Island, this 6th day of August, 2007.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 8/6/2007

---

10:00 a.m.